## Alexander Platt v. Theodore E. Curtiss.
## Same v. Albert B. Curtiss.

1. DRAINS—*Established by Parol Agreements.*—Under the act of June 4, 1889, ditches and drains, either open or covered, theretofore or thereafter constructed by mutual license, consent or agreement of the owners of adjacent or adjoining lands for their mutual benefit, are in law to be held as drains for mutual benefit of all lands interested.

2. DAMAGES—*For the Flooding of Lands.*—Permanent damages, past and future, for flooding lands by obstructing watercourses are legal and proper under declarations properly drawn.

**Trespass on the Case,** for flooding lands. Appeal from the Circuit Court of Morgan County; the Hon. OWEN P. THOMPSON, Judge, presiding. Heard in this court at the November term, 1899. Affirmed. Opinion filed June 12, 1900.

H. G. WHITLOCK, attorney for appellant.

M. T. LAYMAN, attorney for appellees.

MR. JUSTICE HARKER delivered the opinion of the court.

These suits were commenced in the Circuit Court of Sangamon County against appellant for damages caused by his filling up an open ditch whereby the adjacent lands of appellees were flooded.

By agreement the venue was changed to Morgan county, and there the two cases were tried together by the court, the jury having been waived. The court rendered a judgment in favor of Theodore E. Curtiss for $175, and a judgment in favor of Albert B. Curtiss for $225.

The evidence shows that appellant is the owner of the N.W. ¼ of Sec. 18, T. 13 N., R. 7 west of 3rd P. M., in Sangamon county; that Theodore E. Curtiss owns a tract of land which abuts appellant's on the north and that Albert B. Curtiss owns a tract which joins appellant's on the northeast.   For nearly thirty years, and up to within a few years before the commencement of these suits, an open ditch, two or three feet wide, from the land of Albert Curtiss, entered the land of appellant at the northeast corner and, extending in a southwesterly direction over appellant's land toward a creek, furnished an outlet for surface water accumulating upon the lands of Albert and Theodore Curtiss. Appellant's land is lower than the other tracts and the natural trend of the surface is in the direction followed by the old ditch.   In 1893, soon after appellant purchased and took possession of his land, he began filling up the ditch and against the protests of appellees continued to do so until it ceased to be an outlet for the water from the other lands.   He persists in keeping the ditch closed, so that surface water backs up and stands upon appellees' lands, thereby injuring crops and the soil.

The first error assigned upon the record and discussed in the brief of appellant is the action of the court in overruling the demurrer to the declarations.   Appellant did not stand by his demurrer but elected to plead and try the cases upon the merits.   He is in no position, therefore, to urge the overruling of the demurrer as error.

In the first count of the declaration of Theodore E. Curtiss, it is alleged that the ditch was built by contract with a former owner of appellant's land and that it was then agreed between the parties that it should be perpetually maintained.   It is neither alleged nor proven that such contract was in writing, and for that reason, it is contended, was not binding.   In 1857 and 1858 the land now owned by appellant was owned by Ralph Curtiss.   He testified that at that time one Landreth owned the land now owned by Theodore Curtiss and that one Henderson owned the land now owned by Albert Curtiss; that there was about seventy-

five acres of very low, wet land, formed from parts of the different tracts, which was useless without drainage; that the respective owners got together and constructed a ditch over his and the other land and that it was maintained so long as he owned the land. The evidence further shows that it is the same ditch that witnesses testify has been open for more than twenty years and the one filled by appellant. Counsel for appellant says: "Conceding that there was an oral agreement between Ralph C. Curtiss and the other owners of adjacent lands to dig this ditch for the water from the lands owned by the Curtisses to flow over that now owned by Platt, that would amount only to a license, and be revokable at any time;" and cites Illinois authorities in support of the proposition. We call counsel's attention to an act of the legislature relating to drains by mutual license, consent or agreement of adjoining land owners, approved June 4, 1889, and passed after the filing of the opinions in the case cited. Hurd's Revised Statutes of 1898, 694. The first section of the act reads:

"That whenever any ditch or drain, either open or covered, has been heretofore or shall be hereafter constructed by mutual license, consent or agreement of the owner or owners of adjoining or adjacent lands, either separately or jointly, so as to make a continuous line upon, over or across the lands of said several owners, or where the owner or owners of adjoining or adjacent lands shall hereafter by mutual license, consent or agreement, be permitted to connect with a drain already so constructed, or where the owner or owners of the lower lands has heretofore or shall hereafter connect a drain to a drain constructed by the owner or owners of the upper lands, then such drains shall be held to be drain for the mutual benefit of all the lands so interested therein."

The third section reads as follows:

"Whenever drains have been or shall be constructed in accordance with this act none of the parties interested therein shall, without the consent of all the parties, fill the same up or in any manner interfere with the same so as to obstruct the flow of water therein; and the license, consent or agreement of the parties herein mentioned, need not be in writing but shall be as valid and binding if in

parol as if in writing, and may be inferred from the acquiescence of the parties in the construction of such drain."

The fourth section provides that any person having the right under the then existing laws to revoke any parol license before then granted could do so, provided he exercised the right within one year from the time of the act going into force and that a neglect to revoke it within the year should forever bar him from revoking it.

Clearly the ditch in question comes within the spirit and meaning of the act quoted from. It nowhere appears in proof that appellant or his grantor, within one year from the time that the act went into force, elected to revoke the license which grew out of the arrangement under which the ditch was constructed, and the act of appellant in fulfilling it was unlawful.

Complaint is made of the ruling of the trial court in allowing the plaintiffs to prove permanent damages, past and future, to the lands, instead of confining the evidence to proofs of damage to the crops, and such as had accrued to the land before the commencement of the suits. Permanent damages are recoverable in cases of this kind, of course, and the only question involved was whether the declarations were broad enough to allow them. They were certainly proper under the declaration of Theodore Curtiss. While it might be placing a too liberal construction to say that the declaration in the other case was broad enough for that purpose, the proofs show that the damages to Albert Curtiss' crops amounted to as much as that allowed by the court.

We see no force in the contention that Theodore Curtiss is not entitled to recover damages for the reason that at no time during the flooding of the lands was he in possession, but had turned over the entire tract to a son as the prospective owner. The son was holding possession by a mere parol agreement that was liable to be canceled at any time at the option of his father.

We see no sufficient ground for disturbing the finding and the judgment of the Circuit Court.

Judgment affirmed.